IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOANNE ACOFF,**          Case No. 1:18 CV 1444

    Plaintiff,          Judge John R. Adams

    v.          Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.          REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Joanne Acoff ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated June 26, 2018). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in January 2015, alleging a disability onset date of November 22, 2014. (Tr. 276-83). Her claims were denied initially and upon reconsideration. (Tr. 151-66, 168-79). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 182-83). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on January 23, 2017. (Tr. 34-100). On August 16, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 15-25). The Appeals Council denied Plaintiff's

request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on June 26, 2018. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Born in 1963, Plaintiff was 51 years old on her alleged onset date. *See* Tr. 276. She had a twelfth-grade education (Tr. 306), and past work as a home health aide. (Tr. 306-07). At the time of her application, Plaintiff alleged disability due to rheumatoid arthritis and high blood pressure. (Tr. 305).

In a February 2015 disability report, Plaintiff reported she was unable to get out of bed some days due to difficulty standing and walking. (Tr. 330). She had pain in her hands, wrists, and feet. *Id.* She was able to cook, clean, and pick her children up at school, as well as attend events at school "when able". (Tr. 331). Plaintiff reported difficulty sleeping due to pain, but no problems with personal care. *Id.* Plaintiff vacuumed, but her children helped with laundry; it took her approximately a half-hour longer to complete simple chores than previously. (Tr. 332). Plaintiff reported social activities of going out to dinner or the movies approximately twice per month; she also went to church. (Tr. 334). Plaintiff stated she could walk only a few feet and had to rest for five minutes before walking again. (Tr. 335).

In an October 2015 disability report, Plaintiff reported she could not lift, pick up, or carry things. (Tr. 354). She wrote that her "wrists hurt", her "knees pop, shift, buckle, swell [and] give out at times, get large." *Id.* Additionally, she stated she required medication to "make them function and sometimes it takes a couple days for them to operate." *Id.* She said she needed help getting out of bed and washing clothes. *Id.* She "[sat] on a chair to cook for [her] children." *Id.*

At the January 2017 hearing, Plaintiff testified she had previously worked as a home health aide, but stopped because joint inflammation made it difficult for her to care for patients. (Tr. 38). Plaintiff worked approximately 21 hours per week; she missed work about three times per month in her last few months of employment. (Tr. 38-40). She also had difficulty with bending, lifting, and pulling at her prior job. (Tr. 42).

Plaintiff testified she could not work because she had difficulty standing, picking things up, or "try[] to care for somebody." *Id.* Plaintiff cooked dinners most days but sat on a stool in the kitchen to do so. (Tr. 43-44). Standing was particularly hard on her back and ankles, and she estimated she could only stand for five to ten minutes. (Tr. 44). Plaintiff's standing limitation was due to problems in her back, ankles, and knees. (Tr. 60). She used a cane when standing or getting up from a seated position. (Tr. 45). She testified this was because she did not "have any cartilage in [her] knees" and it was difficult to get up. (Tr. 46). Plaintiff also estimated she could sit for twenty minutes before her back started throbbing. (Tr. 58). This bothered her a few times per week. *Id.* Plaintiff's impairments worsened during cold or rainy weather. *See* Tr. 59-62.

Plaintiff testified she had difficulty lifting a gallon of milk. (Tr. 56) ("Sometimes when I pull it out of the refrigerator, my hand drops."). She grocery shopped with a friend, riding in an electric cart. (Tr. 56-57). Her friend drove her, reached for items, and carried the groceries; her children put the groceries away at home. (Tr. 57). Her children also performed most of the household chores, including laundry and putting groceries away. (Tr. 43, 57).

During a typical day, Plaintiff would get up, take one daughter to school, and take her two-year-old granddaughter to daycare around 8:00. (Tr. 63-65). Later, Plaintiff clarified that her friend drove while she rode as a passenger. (Tr. 80-81). She typically picked one of her daughters and her granddaughter up between 3:00 and 3:30, and the two of them cared for her granddaughter

3

until the child's mother (Plaintiff's other daughter) came home between 4:00 and 4:30. (Tr. 64-68). Plaintiff testified she could not pick her grandchild up. (Tr. 69). During the time she was home alone, Plaintiff watched television and napped. (Tr. 83-84)

To socialize, Plaintiff went to church, and occasionally a restaurant. (Tr. 69-70).

Relevant Medical Evidence

In December 2014, Plaintiff had bloodwork done that showed a positive rheumatoid arthritis factor and a high sedimentation rate. (Tr. 436). Her provider referred her to a rheumatologist due to her bloodwork and symptoms of neck, elbow, wrist, and knee pain. (Tr. 433). Plaintiff reported pain aggravated by activity, rest, sleep, and cold or rainy weather. (Tr. 476).

In February 2015 Plaintiff had x-rays of her hands and knees performed due to pain. (Tr. 370-71). The hand x-rays were unremarkable, and the knee x-rays showed moderate bilateral osteoarthritis and ossification at the origin of the MCL suggesting prior injury. *Id.*

At Plaintiff's initial rheumatology visit in 2015, she complained of morning stiffness, increased fatigue and weakness, and joint pain (particularly in her hands, knees, and toes). (Tr. 422). Plaintiff reported "significant relief" from the Prednisone prescribed by her primary care physician for the past month. *Id.* On examination, Irfan Raheem, M.D., noted active synovitis in Plaintiff's hands, swelling without tenderness in her knees, and swelling in her ankles and feet. (Tr. 423). Dr. Raheem noted that after laboratory data came back, Plaintiff would be started on Methotrexate or continue with Tramadol and Mobic; she started to taper off Prednisone. (Tr. 426).

In April 2015, Dorothy Bradford, M.D., performed a consultative examination of Plaintiff. (Tr. 381-88). Plaintiff reported left wrist pain and that she could only lift five pounds. (Tr. 385). She also reported her ankles hurt on stairs, her knees hurt, and she had morning stiffness lasting

an hour. *Id.* On examination, Plaintiff's gait, station, and posture were normal. (Tr. 387). She had synovial thickening of a finger, and tenderness over her left dorsal wrist laterally. *Id.* Her ability to grasp was abnormal. (Tr. 381). She had no tenderness and normal strength and range of motion in her upper and lower extremities. (Tr. 387).

In May 2015, Plaintiff followed up with Bochra Janadeli, M.D. (Tr. 402-05). She reported polyarthralgia/arthritis with morning stiffness, with no relief from non-steroidal anti-inflammatory medication, but "remarkable improvement" in her pain on steroids. (Tr. 402). She reported a prior attempt to taper the Prednisone, but her pain got worse, so "she was restarted on [P]rednisone 10 mg daily which seems to work." *Id.* On examination, Dr. Janadeli noted Plaintiff had hand, wrist, and knee swelling, with mild tenderness, but full range of motion; she had crepitus in her knees. (Tr. 404). Dr. Janadeli gave Plaintiff a Kenalog injection for "immediate relief", re-started her on hydroxychloroquine[1], and instructed her to try to taper the Prednisone. *Id.*

In August 2015, Plaintiff had a follow up appointment for latent tuberculosis. (Tr. 399-400). Plaintiff reported feeling "very well" and on examination had a normal gait. *Id.*

In August 2015, Plaintiff presented to the emergency room with left leg pain and swelling. (Tr. 396-98). Plaintiff was diagnosed with a Baker cyst, and concern for vasculitis; she was given crutches and a left knee Ace wrap, and instructions to ice, rest, and elevate her leg. (Tr. 397). She was instructed to follow up with her rheumatologist and with orthopedics. *Id.*

That same month, Plaintiff had a rheumatology follow-up appointment. (Tr. 391). Ali Askari, M.D., noted Plaintiff complained of a progressive increase in morning stiffness in her wrists, fingers, knees, and ankles. *Id.* Plaintiff specifically identified increased pain and swelling

---

1. Dr. Janadeli noted Plaintiff was previously prescribed hydroxychloroquine, "but she was not very compliant with it (because of sleepiness)." (Tr. 402).

5

in her left knee and ankle. *Id.* She took 5 milligrams of Prednisone daily, but occasionally took more on "bad days". *Id.* On examination, Dr. Askari noted Plaintiff had active synovitis with tenderness to palpation in her fingers, wrists, and knees; her left knee and ankle were "more swollen to palpation of joints." (Tr. 393). Plaintiff had a popliteal cyst in the lateral aspect of her posterior left knee, and moderate warm effusion of the left knee. *Id.* Dr. Askari performed an aspiration of Plaintiff's left knee. *Id.* Plaintiff was instructed to begin Plaquenil, begin a Medrol Dosepak, and continue Prednisone. (Tr. 394).

In April 2016, Plaintiff saw Laura Silversteyn, C.N.P. (Tr. 549-60). Plaintiff was taking Plaquenil and Prednisone. (Tr. 549). She reported the most pain in her knees, and that she used a cane in the morning, but did not need it during the day. *Id.* She reported Meloxicam and Prednisone reduced her pain by 50 percent. *Id.* On examination, Ms. Silversteyn noted left wrist synovial thickening with good range of motion in both wrists, as well as full strength in elbow flexion and extension. (Tr. 552). Plaintiff had decreased active range of motion in her shoulders, with tenderness to palpation. *Id.* She had good range of motion in her lower extremities, with full strength. *Id.* She had mild effusion of the left knee with no warmth, and mild crepitation with flexion and extension. *Id.*

In July 2016, Plaintiff saw Maya Mattar, M.D. (Tr. 543-48). Plaintiff reported pain in her wrists, knees, and lower back which interfered with sleep. (Tr. 543). She was taking Meloxicam, Plaquenil and Prednisone which she reported "helps her by 85%." *Id.* On examination, Dr. Mattar noted no active synovitis in upper or lower extremity joints except effusion and warmth in the left knee. (Tr. 546). Plaintiff had limitation with extension and tenderness to palpation in her right wrist, as well as diffuse myofascial tenderness to palpation. *Id.* Her bone density test was normal.

*Id.* Dr. Mattar started the prior authorization process for adding Enbrel. (Tr. 547). At an appointment the following month, a nurse taught Plaintiff how to administer Enbrel. (Tr. 540-42).

In September 2016, Plaintiff visited the emergency room, but refused treatment. (Tr. 530). Notes indicate EMS reported she was intoxicated, and she "initially tried to elope" from the hospital. And that she was "okay for discharge as she was able to quickly spread throughout the hospital and is neurologically intact otherwise." *Id.*

Plaintiff returned to Dr. Mattar in October 2016, continuing to report pain in her hands, wrists, and knees, worse in the morning and with cold weather. (Tr. 533). She reported 50 percent improvement on her medication regimen of Plaquenil, Prednisone, and Enbrel. *Id.* On examination she had no active synovitis, but crepitation in her knees with range of motion. (Tr. 536). She had "good fists and grips". *Id.*

In November 2016, Plaintiff saw occupational therapist Todd Ott for a functional capacity evaluation. (Tr. 589-96). Plaintiff reported shoulder, arm, wrist, elbow, hand, leg, knee, ankle, and lower back pain. (Tr. 589). Mr. Ott noted Plaintiff "views herself as able to tolerate very limited activities and only perform her essential daily tasks." *Id.* He explained:

> She presents with a generalized overall weakness and deconditioned state. Overall test findings, in combination with clinical observations, suggest the presence of fair physical effort on Ms. Acoff's behalf. She was limited by pain in the regions of the upper and lower back, shoulders, shoulder blades, left hip and legs. She demonstrated restricted back, lower and upper extremity flexibility with overall weakness. She verbalized complaints of right hand cramping during the assessment along with limited shoulder mobility and transitional movement tolerance. [Her] complaints of pain and physical finding[s] increased during the assessment with any increase of activity. The competitive test performance behaviors were present, but she reported pain with most activity, this interfered with the completion of some testing. Overall test findings, in combination with clinical observations suggest a good correlation between the reliability/accuracy of Ms. Acoff's subjective reports of pain / limitation. Overall inconsistencies were considered minor, her subjective reports generally matched well with distraction-based clinical observations.

(Tr. 589). Mr. Ott's evaluation also contained various pain scale assessments. *See* Tr. 590.

7

*Opinion Evidence*

In April 2015, Dr. Bradford opined that Plaintiff "has early RA and can perform light sedentary activity." (Tr. 388). In support she stated: "On exam she has mild synovial thickening in the right third MCP, mild decreased ROM in the knees and hips. Her hand clasps are a little weak 4/5 due to left wrist pain and she might have trouble opening jars or twisting." *Id.*

In May 2015, State agency physician Lynne Torello, M.D., reviewed Plaintiff's medical records. (Tr. 108-10). She opined Plaintiff had severe impairments of osteoarthritis and inflammatory arthritis (Tr. 108) and that Plaintiff could perform a limited range of light work (Tr. 109-10). In August 2015, State agency physician Leanne Bertani, M.D., reviewed Plaintiff's records and affirmed Dr. Torello's opinion. (Tr. 131-34).

In November 2016, Mr. Ott offered a functional capacity opinion. (Tr. 595-96). He opined Plaintiff could sit for 25 minutes at one time for less than two hours of a workday. (Tr. 595). He also opined Plaintiff could stand for less than ten minutes at one time, for a total of less than 45 minutes in a workday. *Id.* He stated Plaintiff was "extremely limited" (defined as only able to perform "0-6% of a day"). *Id.* He also noted Plaintiff was "extremely limited" in her ability to perform overhead reaching, fine control, and heavy grasp hand movements. *Id.* He opined Plaintiff was limited to sedentary work and could lift less than ten pounds. (Tr. 596). Mr. Ott also noted Plaintiff's "complaints of pain and physical findings correlated well." *Id.*

<u>ALJ Decision</u>

In her August 16, 2017 decision, the ALJ found Plaintiff met the insured status requirements for DIB through December 31, 2018 and had not engaged in substantial gainful activity since November 22, 2014. (Tr. 17). She determined Plaintiff had severe impairments of obesity and osteoarthritis, but that these impairments (singly or in combination) did not meet or

medically equal the severity of a listed impairment. (Tr. 17-19). She then concluded Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: occasional use of foot controls for pushing/pulling; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally kneel, crouch, and crawl; can frequently balance and stoop; is limited to frequent forceful pinching and twisting bilaterally; and must avoid working in unprotected heights.

(Tr. 19). The ALJ found Plaintiff incapable of performing past work (Tr. 23), but determined that given her age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform (Tr. 24). Therefore, she determined Plaintiff was not disabled. (Tr. 25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

10

meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single challenge to the ALJ's decision – she contends the ALJ's evaluation of Plaintiff's subjective symptom statements failed to comply with Social Security Ruling 16-3p. (Doc. 12, at 8-11). The Commissioner responds that Plaintiff waived her argument by failing to show the ALJ's alleged error was harmful; and even if Plaintiff did not waive her argument, the ALJ properly evaluated Plaintiff's subjective symptoms. (Doc. 15, at 5-10). In Reply, Plaintiff asserts her argument is not waived and again asserts the ALJ's decision lacks the support of substantial evidence. (Doc. 16, at 1-5). For the reasons discussed below, the undersigned recommends the Commissioner's determination be affirmed.

Waiver

Preliminarily, the Commissioner contends Plaintiff has waived her argument by failing to identify any harmful error. (Doc. 15, at 5-6). That is, the Commissioner contends, Plaintiff argues the ALJ erred in evaluating her subjective symptoms but fails to identify what about this failure would have changed the outcome of her case. *Id.* at 6. In Reply, Plaintiff argues a failure to comply with Social Security Ruling 16-3p means the decision is necessarily unsupported by substantial evidence. (Doc. 16, at 1). To the extent Plaintiff contends she does not have to demonstrate harmful error, she is incorrect. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("[H]armless error analysis applies to credibility determinations in the social security disability context."). However, rather than make a recommendation based on waiver, the undersigned turns to the merits of Plaintiff's argument.

11

Subjective Symptom Analysis

The Sixth Circuit has recognized that pain alone may be disabling. *See King v. Heckler*, 742 F.2d 968, 972 (6th Cir. 1984). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800–01 (6th Cir. 2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

When a claimant alleges impairment-related symptoms, an ALJ must follow a two-step process to evaluate those symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, *2-8.[2] First, the ALJ must determine whether there is an underlying medically

---

2. SSR 16-3p replaces SSR 96-7p and applies to ALJ decisions on or after March 28, 2016. *See* 2017 WL 5180304, at *1, 13. The ALJ's decision here is dated August 16, 2017 and thus SSR 16-3p applies. In March 2016, the Social Security Administration issued new Social Security Ruling 16-3p, which eliminated "'the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p). Both SSR 96-7p and SSR 16-3p direct the ALJ to evaluate an individual's subjective report of symptoms with the factors listed in 20 C.F.R. § 404.1529. SSR 16-3p, 2017 WL 5180304, at *7; SSR 96-7p,1996 WL 374186, at *2. Thus, while the term "credibility" was eliminated, prior case law is still applicable. *See Pettigrew v. Berryhill*, 2018 WL 3104229, at *14 n.14 (N.D. Ohio) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law

12

determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the factors set forth in 20 C.F.R. §§ 416.929(c)(3) and 404.1529(c)(3). *Id.* at *7-8. Those factors include: daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for relief of pain or other symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms, *e.g.*, lying flat on one's back; and any other factors pertaining to a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). Although the ALJ must "consider" the listed factors, there is no requirement that she discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained, interpreting SSR 96-7p, the precursor ruling, that a credibility determination will not be disturbed "absent compelling reason", *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such a determination is "virtually unchallengeable", *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation omitted). The Court is thus limited to determining whether the ALJ's reasons are supported by substantial

---

discussing and applying the credibility or symptom analysis governed by SSR 96–7p has been invalidated by SSR 16–3p."), *report and recommendation adopted by* 2018 WL 3093696.

evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]."). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

The undersigned finds no "compelling reason", *Smith*, 307 F.3d at 379, to disturb the ALJ's subjective symptom evaluation in this case. Read as a whole, the ALJ's decision contains sufficiently well-articulated reasons for discounting Plaintiff's subjective symptom statements.

First, in the decision, the ALJ summarized Plaintiff's function reports and testimony, and then stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the objective evidence or record and other evidence, as defined in 20 CFR 404.1529(c)(4) and 416.929(c)(4). For example, the claimant sought treatment for polyarthralgia with morning stiffness (Exhibits 4F at 15 [Tr. 403] and 5F at 47 [Tr. 477]). She began taking steroids daily and experienced significant improvement in her pain and swelling.

(Tr. 20). Although Plaintiff contends the records cited by the ALJ do not support her finding, the undersigned disagrees. The ALJ cited a December 2014 visit at which Plaintiff described joint swelling and stiffness. (Tr. 477). On examination, the provider found "mildly reduced" range of shoulder and cervical spine motion, "mild pain" in Plaintiff's hands, and swelling and pain with motion in her knees. *Id.* Plaintiff was prescribed Prednisone at this visit. (Tr. 478). The second record cited by the ALJ corresponds to a May 2015 office visit. (Tr. 402-05). At that visit, Dr. Jandali noted Plaintiff had a "remarkable improvement in her pain" after starting the Prednisone.

14

(Tr. 402). He also noted Plaintiff reported 30 minutes of stiffness in the morning, and attempts to wean off the Prednisone resulted in increased pain. *Id.* However, Plaintiff "was restarted on prednisone 10 mg daily which seems to work." *Id.* On examination, Dr. Jandali noted Plaintiff had swelling and synovitis in her fingers, swelling in her wrists with "mild tenderness" and full range of motion, and swelling with "mild effusion" and crepitus in her knees. (Tr. 404). Thus, to the extent Plaintiff argues that her symptoms were not *completely* resolved, she is correct. But the ALJ did not state they were, rather, she stated Plaintiff "experienced significant improvement in her pain and swelling." (Tr. 20).

Additionally, in reviewing for substantial evidence, the Court may review the entire record, not just the records cited by the ALJ. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)). Additional records support the ALJ's determination that Plaintiff experienced significant improvement with medication. *See* Tr. 422 (February 2015 – reporting "significant relief" from Prednisone); Tr. 549 (April 2016 – reporting "Meloxicam 15mg helps by 50%, Prednisone by 50%"); Tr. 543-44 (July 2016 – reporting combination of Prednisone, Plaquenil, and Meloxicam "helps her by 85%"); Tr. 533 (October 2016 – reporting 50% improvement on medication regime of Enbrel, Plaquenil, and Prednisone); *see also* Tr. 546 (July 2016 – no active synovitis); Tr. 536 (October 2016 – no active synovitis).

Second, the ALJ made findings elsewhere in her opinion to support her credibility analysis. She noted an inconsistency between Plaintiff's allegation that she required a cane (Tr. 46), and the fact that she: 1) reported to a treating source that she only needed it in the morning and not during the day, and 2) was noted to be ambulating quickly through a hospital emergency department, with no mention of a cane. (Tr. 21). This is supported by the record. *See* Tr. 549 ("[U]ses cane in the

morning, but does not need it during the day[.]"); Tr. 530 ("She initially tried to elope . . . she is okay for discharge as she was able to quickly spread throughout the hospital[.]"). Such inconsistencies in the record are a valid reason to discount a claimant's subjective statement of symptoms. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Third, the ALJ also cited evidence indicating Plaintiff exaggerated her symptoms. *See* Tr. 22. Therein, she explained:

> Second, [Mr. Ott] noted the claimant only put forth 'fair' effort. This is not the same as 'full effort.' This is significant because one of the questions posed to Mr. Ott in the referral was to assess her effort. Third, the questionnaires provided to the claimant were tracking purely subjective impressions and some testing showed evidence of exaggeration, including the Mcgill Pain questionnaire. The claimant's score was 37 and scores above 30 tend to indicate exaggeration of symptoms. The claimant's score was 37 and scores above 30 tend to indicate exaggeration of symptoms. The Numeric Pain Scale score was 8/10 and the best in the past 30 days she reported also was 8/10. While Mr. Ott noted that "there is no current research to show an exact cut off point," the claimant's pain disability index was also exceedingly high at 56/70.

*Id.* In a footnote, the ALJ further elaborated: "According to the developer of the Numeric Pain Scale, a rating between 6 and 10+ is an indication of symptom magnification behavior or severe impairment. In view of the fact that the claimant gave 'fair' effort and scored in the exaggerated phase on the Mcgill Pain Questionnaire, it is more likely than not her symptom report was an exaggeration." *Id.* at n.2. This is another valid reason to discount Plaintiff's subjective reports of symptoms. *See, e.g., Parker v. Comm'r of Soc. Sec.*, 2017 WL 2671088, at *3 (W.D. Tenn.) ("The ALJ could properly rely on evidence of exaggeration as a factor negatively impacting Plaintiff's credibility.") (citing *Jones v. Astrue*, 2008 WL 4552478 at *15 (M.D. Tenn.) (exaggerated complaints with symptom magnification among credibility factors properly considered by ALJ)).

16

Finally, the ALJ examined the objective evidence in the record. (Tr. 20-23). Therein, she correctly noted Plaintiff had synovitis, swelling, and tenderness at times, but her discussion evidences a judgment that Plaintiff's conditions were less limiting than she alleged. *See, e.g.,* Tr. 20 (noting that while Plaintiff had swelling, synovitis, and tenderness, Plaintiff was also noted to have full range of motion, and a normal gait) (citing Tr. 393, 397, 400, 404, 546, 549); (Tr. 20) (noting that in October 2016, Plaintiff "exhibited no active synovitis in the upper or lower extremities:" and had "good grip strength.") (citing Tr. 536); Tr. 21 (noting Dr. Bradford's examination revealed "mild" synovial thickening, "mild" decreased range of motion, and "slight weakness" in hand grasp) (citing Tr. 381-88). Moreover, the ALJ explained she gave only partial weight to Dr. Bertani's analysis because "[s]ubsequent evidence demonstrates no synovial thickening on many examinations and good range of motion and strength in the hands. (Exhibit 9F). Therefore, the weight of the objective evidence of record does not support limiting the use of both hands except for frequent forceful pinching and twisting bilaterally." (Tr. 22) (citing Tr. 533-85). In the conclusion of her step four analysis, the ALJ explained:

> In addition, recent examination[s] demonstrate normal range of motion in everything but lumbar spine and wrists at times, and only slightly weakened grasp (Exhibits 3F and 9F). When all of this is combined with other exam findings including recent ones from Dr. Matter in Ex 9F in April, July and October 2016 and even from Dr. Bradford during the consultative examination which showed normal ROM in everything but lumbar and only slightly weakened grasp 4/5 – this militates toward the claimant over-reporting her pain and limitations. Recall also the fact that when she went to the emergency room in an intoxicated state in September 2016, there was no mention of her using a cane, limping or having difficulty ambulating. To the contrary, medical staff documented she moved "quickly["] through the hospital and left [against medical advice]."

(Tr. 22-23). This evaluation of the medical and other evidence further supports the ALJ's earlier statement that "the claimant's statements concerning the intensity, persistence, and limiting effects

17

of [her] symptoms are not entirely consistent with the objective evidence of record and other evidence[.]" (Tr. 20).

While it may have been preferable for the ALJ to have explicitly referenced these record inconsistencies in the paragraph expressing her analysis of Plaintiff's subjective symptom statements, that is not required so long as her reasoning is apparent to the reader. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion[.]"); *Pugh v. Comm'r of Soc. Sec.*, 2017 WL 1395511, at *8-9 (E.D. Mich.) (finding no error where ALJ's reasoning was "not contained in the portion of his decision in which he announced his ultimate credibility finding" because "his reasoning [was] adequately spelled out throughout the decision such that it [was] apparent to the reader"), *report and recommendation adopted*, 2017 WL 1374695. Here, reading the ALJ's decision as a whole, several valid reasons are apparent as to why he discounted Plaintiff's credibility.[3] The ALJ therefore complied with SSR 16-3p. *See* 2017 WL 5180304, at *10 ("The . . . decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). This is not to say that there is not also contrary evidence in the record, or that Plaintiff has no limitations. However, this Court must affirm even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, "so long as substantial evidence also

---

3. This case is thus distinguishable from a prior Report and Recommendation of this Court cited by Plaintiff in Reply, *Acosta-Padilla v. Comm'r of Soc. Sec.*, Case No. 17 CV 2256 (N.D. Ohio 2018) (Doc. 19). There, the ALJ provided no additional evaluation beyond her statement that the claimant's statements were unsupported. Here, by contrast, as discussed above, the ALJ's decision read as a whole offers several supported reasons for discounting Plaintiff's statements.

18

supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. It does so here. As such, the undersigned recommends the Commissioner's decision be affirmed.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.

        s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).